UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Deutsche Bank National Trust
Company, Trustee for Long Beach
Mortgage Loan Trust 2006-5

    v.                                 Civil No. 09-cv-385-LM

Alia Fadili, Stewart Title
Company, and Stewart Title
Guaranty Company

## O R D E R

Plaintiff (hereinafter "Deutsche Bank") has sued three defendants in ten counts seeking various forms of relief for claims related to a mortgage loan made by Deutsche Bank's predecessor interest to Alia Fadili ("Alia" or "Fadili"). Fadili, in turn, asserts three counterclaims against Deutsche Bank.  Before the court are motions for summary judgment filed by each of the three defendants plus Deutsche Bank's motion for summary judgment.  For the reasons that follow, the summary judgment motions filed by Stewart Title Company and Stewart Title Guaranty Company are both granted; the summary judgment motion filed by Fadili is granted as to Count III but otherwise denied; and the summary judgment motion filed by Deutsche Bank is denied.

## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The object of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'"  Dávila v. Corporación de P.R. para la Diffusión Pública, 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)).  "[T]he court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citations and internal quotation marks omitted).

"Once the moving party avers an absence of evidence to support the non-moving party's case, the non-moving party must offer 'definite, competent evidence to rebut the motion,'" Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009) (citing Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)), and "cannot rest on 'conclusory allegations, improbable inferences, [or] unsupported speculation,'" Meuser, 564 F.3d at 515 (quoting Welch v. Ciampa, 542 F.3d 927, 935 (1st Cir. 2008)).  When ruling on a party's motion for summary judgment, a trial court "constru[es] the record in the light most favorable

2

to the nonmovant and resolv[es] all reasonable inferences in [that] party's favor."  Meuser, 564 F.3d at 515 (citing Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002)).

## Background

In their motions for summary judgment, defendants Stewart Title Company ("Stewart Title") and Stewart Title Guaranty Company ("Stewart Guaranty"), incorporate statements of material facts, with record citations, as to which they contend there is no genuine issue to be tried, as required by Local Rule 7.2(b)(1).  In its objections to those motions, Deutsche Bank identifies no factual disputes in the manner required by Local Rule 7.2(b)(2).  In her motion for summary judgment, Fadili incorporates a Rule 7.2(b)(1) factual statement, but Deutsche Bank, in opposition, does not identify any factual dispute as per Rule 7.2(b)(2).  However, both Stewart Title and Stewart Guaranty have filed objections to Fadili's summary judgment motions in which they properly contest several of the facts she says are undisputed.  Finally, in its motion for summary judgment, Deutsche Bank does not include a Rule 7.2(b)(1) factual statement.  That said, unless otherwise noted, the facts that follow are undisputed.

This case involves two pieces of real estate and three members of the Fadili family: Adel Fadili ("Adel"), his son Amir Fadili ("Amir"), and defendant Alia Fadili, daughter of Adel and sister of Amir.  By 1984, Adel had acquired two pieces of lakefront real estate in Alton, a vacant lot and a lot with improvements ("the house lot").[1]  Both lots are bisected by a right of way.  Once known as Mount Major Park Road, that right of way is now known as Roger Street.  The residence situated on the house lot is referred to in various documents involved in this case as having the street address "132 Rogers Road" or some variant thereof.

In December of 2001, Adel entered into a purchase and sale agreement with Amir to convey to Amir property "located at Mount Major Rd."  Def.'s Mot. Summ. J., Ex. J (doc. no. 31-12), at 115.  Amir, in turn, obtained a loan to purchase the property. Exhibit A to Amir's mortgage included the legal description, i.e., the metes and bounds, of the vacant lot.  See id., Ex. J (doc. no. 31-11), at 117-18.  Stewart Title was the settlement agent for the transaction between Adel and Amir.  The affidavit of encumbrances prepared by Stewart Title listed one mortgage. See id., Ex. J (doc. no. 31-12), at 20.  Exhibit A to that

_____

[1] Both the vacant lot and the house lot were assembled from smaller parcels, but the details of their assembly are not relevant to any issue before the court.

mortgage, i.e., Adel's mortgage, was not the legal description of the vacant lot but, rather, the legal description of the house lot.  See Compl., Ex. D. (doc. no 1-4), at 3-4.

In the warranty deed Adel gave Amir, executed on January 16, 2006, the section describing the property conveyed says:

SEE ATTACHED EXHIBIT A FOR COMPLETE DESCRIPTION MADE A

Reference is hereby made to a deed from Harry R. Thompson and Maybelle F. Thompson dated October 29, 1984 to Adel Fadili and recorded in the Belknap County Registry of Deeds in Book 888, page 1000.

Def.'s Mot. Summ. J., Ex. A (doc. no. 29-3), at 7 (apparent omission in the original).  The deed does not include a street address.  The property described in Exhibit A to the deed from Adel to Amir is the vacant lot.  See id. at 8-9.[2]  The Thompson deed conveyed the vacant lot to Adel.  See Def.'s Mot. Summ. J., Ex. E (doc. no. 31-6), at 2-3.

---

[2] In the deed from the Thompsons to Adel, the description of Tract I begins: "A tract of land on the shore of Lake Winnipesaukee between Alton Bay and West Alton, and being Lot S as shown on Plan of Mt. Major Park . . . which tract is bounded and described as follows:"  Def.'s Mot. Summ. J., Ex. E (doc. no. 31-6), at 2 (internal quotation marks omitted).  In the deed from Adel to Amir, the description of Tract I begins slightly differently: "A tract of land with the buildings thereon on the shore of Lake Winnipesaukee between Alton Bay and West Alton an[d] being Lot S as shown on Plan of Mt. Major Park . . . which tract is bounded and described as follows:"  Id., Ex. G (doc. no. 31-7), at 3 (emphasis added, internal quotation marks omitted).  It is unclear how or why a reference to "the buildings thereon" was inserted into the legal description of what all acknowledge to be a vacant lot.  Notwithstanding that difference, the two deeds utilize the same metes and bounds.

On January 20, 2006, Amir entered into a purchase and sale agreement ("P&S") with Alia to convey to her "land and building situated at 132 Roger Road, Alton, NH 03809, and more particularly described in a deed recorded at the Belknap County Registry of Deeds in Book 1719, Page 728."  Def.'s Mot. Summ. J., Ex. A (doc. no. 29-3), at 3.  The deed to which the P&S referred is the deed Adel gave Amir, which conveyed the vacant lot.  See id. at 7.  The P&S between Amir and Alia also provided, among other things:

> Included in the sale as part of said premises are the buildings, structures and improvement now thereon and the fixtures belonging to the SELLER and used in connection therewith including, if any, all wall-to-wall carpeting, drapery rods, automatic garage door openers, venetian blinds, window shades, screens, screen doors, storm windows and doors, awnings, shutters, furnaces, heaters, heating equipment, stoves, ranges, oil and gas burners and fixtures appurtenant thereto, hot water heaters, plumbing and bathroom fixtures, garbage disposers, electric and other lighting fixtures, mantels, outside television antennas, fences, gates, trees, shrubs, plants, and ONLY IF BUILT IN, refrigerators, air conditioning equipment, ventilators, dishwashers, washing machines and dryers.

Id. at 3.  The foregoing language would appear to evince an intent to convey an improved lot rather than an unimproved lot. The P&S described above was forwarded to Stewart Title in connection with a "Request to Order Title."  See id. at 2.

In the warranty deed Amir gave Alia, executed on April 27, 2006, the section describing the property conveyed says:

> A certain lot or parcel of land together with any
> buildings thereon, situated in County of Belknap and
> State of New Hampshire, more particularly described in
> Exhibit A attached hereto and incorporated herein by
> reference.

Def.'s Mot. Summ. J., Ex. G (doc. no. 31-8), at 2.  The deed does not include a street address.  The property described in Exhibit A to the deed from Amir to Alia is the vacant lot.  See id. at 4-5.

Alia financed her purchase by obtaining a loan from, and granting a mortgage to, Long Beach Mortgage Company ("Long Beach").  In preparation for making its loan to Alia, Long Beach had the house lot appraised.  In the mortgage, also dated April 27, 2006, the property securing the loan is characterized as follows:

> the following described property located in BELKNAP
> County, New Hampshire
>
>     LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART
>     HEREOF
>
> which has the address of 132 ROGERS ROAD.

Def.'s Mot. Summ. J., Ex. J (doc. no. 31-12), at 68.  The legal description attached to the mortgage is the legal description of the vacant lot.  See id. at 95-96.  Despite incorporating the legal description of the vacant lot, the mortgage includes a second-home rider.  See id. at 69.

The same day Alia executed her mortgage, Long Beach transferred the servicing of Alia's loan to Washington Mutual

Bank ("Washington Mutual").  On June 1, 2006, Long Beach
assigned Alia's mortgage, and its rights thereunder, to Deutsche
Bank, pursuant to a Pooling and Servicing Agreement.  As a
result, the mortgage was placed into a trust, known as a real
estate mortgage investment conduit, or REMIC.

Stewart Title was the closing agent for the conveyance from
Amir to Alia.  Prior to the closing, Long Beach presented
Stewart Title with a document titled "Lender's Instructions to
Closing Agent," see Compl. Ex. N (doc. no. 1-14), that listed
various documents necessary to close the transaction, including
a policy of title insurance that met certain requirements.

In connection with the conveyance from Amir to Alia,
Stewart Guaranty issued a commitment for title insurance with an
effective date of April 4, 2006.  Schedule A to the commitment
includes the following characterizations of the property
involved:

> 2.    The estate or interest in the land described or
>        referred to in this Commitment and covered herein
>        is:
>
>           Fee Simple
>
> 3.    Title to said estate or interest in said land is
>        at the effective date vested in:
>
>           Amir A. Fadili by virtue of a Warranty Deed
>           from Adel Fadili dated January 16, 2002 and
>           recorded in the Belknap Registry of Deeds in
>           Book 1719, Page 728.

> 4.   The land referred to in this commitment is
>      described as follows:
>
>      **132 Rogers Road** in the City/Town of **Alton**,
>      County of **Belknap**, and the state of **NH**; and is
>      described as set forth in Exhibit "A" attached
>      hereto and made a part hereof.

Compl., Ex. O (doc. no. 1-15), at 5 (emphasis in the original).

The deed from Adel to Amir recorded in Book 1719, Page 728,

conveyed the vacant lot.  Exhibit A to the commitment is the

legal description of the vacant lot.  See id. at 6-7.

Subsequently, Stewart Guaranty issued a policy of title

insurance to Long Beach dated May 2, 2006.  Schedule A of that

policy provides:

> 4.   The insured mortgage and assignments thereof, if any,
>      are described as follows:
>
>      A mortgage from Alia Fadili to Longbeach
>      Mortgage Company in the amount of $840,000.00
>      dated April 27, 2006 and recorded in the Belknap
>      County Registry of Deeds in Book 2293, Page 730,
>      on May 2, 2006.
>
> 5.   The land referred to in this Policy is described
>      as follows:
>
>      SEE ATTACHED EXHIBIT "A" FOR COMPLETE LEGAL
>      DESCRIPTION MADE A PART HEREOF.
>
>      Property address: 132 Rogers Road, Alton NH.

Def.'s Mot. Summ. J., Ex. K (doc. no. 31-13), at 6.  Exhibit A

to the insurance policy is the legal description of the vacant

lot.  See id. at 12-13.

In 2005, Adel Fadili filed for Chapter 7 bankruptcy protection.  The bankruptcy Trustee included the house lot in the bankruptcy estate, and in July of 2008, filed a proposed notice of intent to sell the property at public auction.  Alia objected to the sale, as did Washington Mutual.  Washington Mutual argued that while Adel conveyed the vacant lot to Amir in 2002, both Adel and Amir had intended for Adel to convey the house lot.  Washington Mutual also pointed out that: (1) Long Beach loaned Alia $840,000; (2) at the time of the loan, the house lot was appraised at $1,050,000; and (3) the vacant lot had an assessed value of $501,500.  Finally, Washington Mutual indicated that it had filed a claim with Stewart Guaranty.  After a hearing, the bankruptcy court granted the Trustee's motion to sell the house lot.  Subsequently, the Trustee sold the house lot to Growth Equity, LLC, of which Amir Fadili is a member.

In its claim on the title-insurance policy, Washington Mutual explained that both the deed from Amir to Alia and the mortgage Alia gave Long Beach contained the legal description of something other than the house lot, and that Adel remained the record owner of the house lot.  Washington Mutual then asked Stewart title to investigate the matter and to defend its interest in the house lot.  Stewart Guaranty denied the claim, pointing out that the policy defines "land" to be the land

described in Schedule A of the policy, and that Schedule A of
the policy Stewart Guaranty issued Long Beach did not mention
the house lot, thus precluding coverage under the policy.
Stewart Guaranty also pointed out the policy's exclusion for
defects assumed or agreed to by the insured claimant, and stated
that because Long Beach had accepted the description of the
property to be insured, any defect associated with that property
description was excluded from coverage.

By August 1, 2008, Alia had stopped making her mortgage
payments.  In response, Washington Mutual sent her a notice of
intent to foreclose.  Thereafter, Deutsche Bank, as trustee for
Long Beach Mortgage Loan Trust 2006-5, notified Alia that it had
been instructed, by Washington Mutual, to foreclose on her
mortgage.

Based on the foregoing, Deutsche Bank has sued: (1) Alia
Fadili, for breach of contract (Count I), promissory estoppel
(Count III), negligence (Count V), negligent misrepresentation
(Count IX), and unjust enrichment (Count X); Stewart Title, for
negligence (Count IV) and breach of contract (Count VIII); and
(3) Stewart Guaranty, for breach of contract (Counts VI and
VII).  Deutsche Bank also seeks, in Count II, a declaratory
judgment that it is entitled to foreclose against the vacant lot
in order to partially recover what it is owed on its loan to
Fadili.  Deutsche Bank filed this action on November 16, 2009.

11

Fadili, in turn, asserts counterclaims for breach of contract and negligence against Deutsche Bank, and seeks a declaratory judgment that the mortgage on the vacant lot is invalid and asks for an order discharging it.

## Discussion

Stewart Title, Stewart Guaranty, and Fadili have all moved for summary judgment on Deutsche Bank's claims, while Deutsche Bank has also moved for summary judgment, presumably on Fadili's counterclaims.  The court considers each of those four motions in turn.

A. Stewart Title's Motion

Deutsche Bank asserts claims against Stewart Title for both negligence (Count IV) and breach of contract (Count VIII).  In Count IV, Deutsche Bank claims that Stewart breached its duty to Long Beach "[b]y failing to recognize that the description of the property which was attached to the title, and the Mortgage, as well as the title insurance policy was not the [house lot]." Compl. ¶ 62.  As for the injury it claims to have suffered, Deutsche Bank alleges that "[a]s a result of Stewart Title's breach, Adel Fadili retained ownership of the [house lot] which

property was eventually sold by the Chapter 7 Trustee preventing the Plaintiff from ever reforming the mortgage."[3]  Compl. ¶ 64.

In Count VIII, Deutsche Bank alleges that Stewart Title was obligated under its contract with Long Beach "to perform a title examination of the [house lot] and confirm that the loan being given to Alia Fadili was secured by a mortgage for the [house lot]."  Compl. ¶ 93.  Deutsche Bank further alleges that "[t]he closing instructions (see exhibit "N") which were executed [i.e., carried out] by Stewart Title required Stewart Title to give the Plaintiff a valid ALTA lender's title insurance policy insuring that Long Beach held a first mortgage secured by the subject property."[4]  Compl. ¶ 94.  As best the court can tell, and the complaint is far from clear, the contract on which Deutsche Bank bases its claims consists of: (1) Stewart Title's agreement to perform the title search specified in the "Request for Order of Title," which incorporated the P&S; and (2) its agreement to serve as closing agent and perform the tasks described in the "Lender's Instructions to Closing Agent."

---

[3] How a title search conducted in connection with the transaction from Amir to Alia could have caused Adel to retain ownership of the house lot is not at all clear.  At the very least, Deutsche Bank takes several links out of the chain of causation.

[4] While the instructions did require Stewart Title to send a title insurance policy to Long Beach, and also indicate certain policy requirements, those instructions nowhere identify the property to be covered by the title insurance policy.

Deutsche Bank claims that Stewart Title breached its contract with Long Beach "by failing to properly review the title examination, to attach the proper description to the Mortgage and failing to attach the proper description to the policy," Compl. ¶ 95.

Stewart Title argues that both the negligence and breach of contract claims are barred by the statute of limitations, and it makes additional arguments specific to each claim.  Deutsche Bank objects.  Its objection includes a one-paragraph statement of undisputed facts, and concludes by contending that "genuine material issues of fact remain to be resolved at trial."  Pl.'s Obj. (doc. no. 40-1), at 8.  But, Deutsche Bank's objection does not "incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which [it] contends a genuine dispute exists so as to require a trial," as mandated by Local Rule 7.2(b)(2).  That said, the court begins with the statute of limitations, and then turns to each of the two claims.

### 1. Statute of Limitations

Stewart Title argues that because the acts or omissions on which Deutsche Bank bases its claims occurred more than three years before it filed suit, those claims are barred by the statute of limitations.  Deutsche Bank contends that because it filed suit within three years after it learned that it had been

injured by Stewart Title's alleged acts and omissions, its action was timely filed.  The court does not agree.

"It is . . . commonly accepted that in diversity cases state statutes of limitations apply."  Godin v. Schencks, 629 F.3d 79, 88 (1st Cir. 2010) (citing Guaranty Trust Co. v. York, 326 U.S. 99, 110 (1945)); see also Feddersen v. Garvey, 427 F.3d 108, 112 (1st Cir. 2005).  The New Hampshire statute of limitations for personal actions provides:

> Except as otherwise provided by law, all personal actions, except actions for slander or libel, may be brought only within 3 years of the act or omission complained of, except that when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

N.H. Rev. Stat. Ann. ("RSA") § 508:4, I.  Both Counts IV and VIII state claims that qualify as personal actions.  For purposes of RSA 508:4, I, "[p]ersonal actions . . . include those to recover for personal injury . . . and [breach of] contract."  State v. Lake Winnipesaukee Resort, LLC, 159 N.H. 42, 48 (2009) (citing Therrien v. Sullivan, 153 N.H. 211, 213 (2006) (personal injury); A&B Lumber Co. v. Vrusho, 151 N.H. 754, 756 (2005) (breach of contract)).

"[T]he defendant bears the burden of proving that [the statute of limitations] applies in a given case." Billewicz v. Ransmeier, 161 N.H. 145, 149 (2010) (quoting Glines v. Bruk, 140 N.H. 180, 181 (1995). "The defendant meets that burden by a showing that the action was not brought . . . within 3 years of the act or omission complained of." Billewicz, 161 N.H. at 149 (citation and internal quotation marks omitted).

"Once the defendant has established that the statute of limitations would bar the action, the plaintiff has the burden of raising and proving that the discovery rule is applicable to an action otherwise barred by the statute of limitations." Beane v. Dana S. Beane & Co., 160 N.H. 708, 713 (2010) (quoting Glines, 140 N.H. at 181). The discovery rule, in turn,

> "is a two-pronged rule requiring both prongs to be satisfied before the statute of limitations begins to run." Big League Entm't [v. Brox Indus.], 149 N.H. 480,] 485 [(2003)]. "First, a plaintiff must know or reasonably should have known that it has been injured; and second, a plaintiff must know or reasonably should have known that its injury was proximately caused by conduct of the defendant." Id. "Thus, the discovery rule exception does not apply unless the plaintiff did not discover, and could not reasonably have discovered, either the alleged injury or its causal connection to the alleged negligent act." Perez [v. Pike Indus.], 153 N.H. (158,] 160 [(2005)].

Beane, 160 N.H. at 713 (parallel citations omitted).

Here, it is undisputed that Deutsche Bank filed this action more than three years after the acts or omissions on which it bases its negligence and breach of contract claims against

Stewart Title.[5]  Thus, the only question is whether those claims
are saved by the discovery rule.

Deutsche Bank argues that it is entitled to relief under
the discovery rule because: (1) it first became aware that it
had been injured by Stewart Title's conduct in August of 2008,
when Fadili's counsel informed Washington Mutual of his belief
that Stewart Title had violated various duties it owed Long
Beach by failing to recognize that the deed from Amir to Alia,
Alia's mortgage, and the 2006 title-insurance policy all
incorporated the legal description of the vacant lot; and (2) it
could not reasonably have discovered its injury at the time
Stewart Title committed the allegedly injurious acts.  Stewart
Title disagrees, arguing that: (1) Deutsche Bank's discovery
responses demonstrate that Deutsche Bank cannot establish that
Long Beach did not know of its injury, i.e., the fact that it's
loan was secured by a mortgage on the vacant lot, at the time of
the closing; and (2) Deutsche Bank has not alleged any facts
from which it could be determined that Long Beach could not have
discovered its injury at the time of the closing.

For the purpose of resolving the matter before it, the
court will assume that Long Beach did not know of its injury at
the time of the closing.  That, however, is not enough; Deutsche

---

[5] Those acts or omissions took place no later than April 27,
2006, and this action was filed in November of 2009.

Bank also bears the burden of proving that Long Beach could not reasonably have discovered its injury at the time of the closing.  It has not done so.

Regarding whether Long Beach could reasonably have discovered its injury, Deutsche Bank argues:

> Plaintiff's predecessor, Long Beach, hired Defendant Stewart Title to perform services which Long Beach itself had no expertise to perform.  Because it had no expertise, Long Beach also had no way of checking on Defendant's work.  It would have had to have hired another closing company or law office to check the work of Defendant Stewart Title.  . . .  Because of the level of expertise required to discover the error in the title insurance description and the mortgage Plaintiff could not have been expected to discover the error, until it was discovered by persons able to make such determination.

Pl.'s Mem. of Law (doc. no. 40-1), at 7 (citing Sevy v. Sec. Title Co. of S. Utah, 902 P.2d 629 (Utah 1995)).  If Long Beach had been injured by making a loan that was secured by a mortgage on a property with a defective title, then Deutsche Bank's argument might be meritorious.  But here, the injury did not result from a title defect; Deutsche Bank claims that Long Beach was injured by taking a mortgage on a property that had a perfectly good title, but that was not the property Long Beach thought it was getting a mortgage on.  Construing Deutsche Bank's claim in the most favorable way possible, it asserts that Stewart Title breached its duty by failing to ascertain that the street address listed in the purchase and sale agreement was not

18

the address of the property conveyed by the deed that was also listed in the agreement.  Stated less generously, Deutsche Bank's claim is that Stewart Title failed to discover one or more of the following: (1) the property Amir conveyed to Alia was not the property they intended him to convey; or (2) the property Long Beach accepted as security for its loan to Alia was not the property it thought it was getting.

Thus, the issue is not the quality of Stewart Title's title search or Long Beach's ability to check that work; the issue is the content of the instructions, presumably the description of the property in the P&S from Amir to Alia, that caused Stewart Title to research the vacant lot rather than the house lot.[6]  It is not a stretch to presume that Long Beach could reasonably have discovered, at the time of the closing, that the P&S it sent Stewart Title listed the street address of the house lot and a registry of deeds book and page reference to the deed that conveyed the vacant lot from Adel to Amir.  In any event, Deutsche Bank has not argued, much less proven, otherwise.  Accordingly, Deutsche Bank is not entitled to the protection of the discovery rule.

---

[6] The court notes that when Stewart Title was asked to perform a title search and was presented with a P&S that listed both a street address and a registry of deeds book and page reference, it can hardly be faulted for conducting a title search based on the only deed reference it was given rather than trying to conduct a search based on a street address.

While Stewart Title is entitled to summary judgment because Deutsche Bank's claims are time-barred, the court further considers Deutsche Bank's two claims on the merits.

### 2. Count IV: Negligence

Stewart Title argues that it is entitled to summary judgment on Deutsche Bank's negligence claim, described in detail above, because: (1) it owed no duty to Deutsche Bank; (2) any negligence claim that Long Beach might have against Stewart Title was never transferred to Deutsche Bank; and (3) Deutsche Bank's negligence claim is barred by the economic-loss doctrine. Deutsche Bank does not respond to any of those three arguments. The court is persuaded by Stewart Title's argument based on the economic-loss doctrine.

The economic-loss doctrine, which has been adopted in New Hampshire, see Plourde Sand & Gravel Co. v. JGI Eastern, Inc., 154 N.H. 791, 794 (2007), "is a 'judicially-created remedies principle that operates generally to preclude contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship,'" id. (quoting Tietsworth v. Harley-Davidson, Inc., 677 N.W.2d 233, 241 (Wis. 2004)).  In New Hampshire, "where a plaintiff may recover economic loss under a contract, generally a cause of action in tort for purely economic loss will not lie."  Plourde,

154 N.H. at 794 (citing Ellis v. Robert C. Morris, Inc., 128 N.H. 358, 363 (1986)).

Here, Deutsche Bank alleges purely economic damages arising out of Long Beach's contractual commercial relationship with Stewart Title.  And, the factual allegations supporting Deutsche Bank's negligence claim are virtually identical to those supporting its breach of contract claim.  Compare Compl. ¶ 61 ("Stewart Title had a duty to Long Beach to perform its services in a reasonable and professional manner and to make sure that Long Beach had a security interest in the [house lot].") with Compl. ¶ 93 ("The contract between Long Beach and Stewart Title required Stewart Title to perform a title examination of the [house lot] and confirm that the loan being given to Alia Fadili was secured by a mortgage for the [house lot].").  Moreover, as Deutsche Bank does not respond in any way to Stewart Title's invocation of the economic-loss doctrine, it necessarily does not identify "a duty that lies outside the terms of the contract," Plourde, 154 N.H. at 794, which might support an exception to the economic-loss doctrine, see id.  Accordingly, the court concludes that Deutsche Bank's negligence claim against Stewart Title is barred by the economic-loss doctrine.  Thus, Stewart Title is entitled to summary judgment on Count IV.

### 3. Count VII: Breach of Contract

Stewart Title argues that it is entitled to summary judgment on Deutsche Bank's breach of contract claim, described in detail above, because: (1) Deutsche Bank was not a party to any contract with Stewart Title; (2) Long Beach never assigned any contract rights against Stewart Title to Deutsche Bank; and (3) Deutsche Bank is not a third-party beneficiary of any contract between Long Beach and Stewart Title.  Deutsche Bank addresses only one of Stewart Title's three arguments, contending that it is, in fact, a third-party beneficiary of Long Beach's agreement with Stewart Title.

In New Hampshire, "[a] breach of contract occurs when there is a '[f]ailure without legal excuse to perform any promise that forms the whole or part of a contract.'" Bronstein v. GZA GeoEnvironmental, Inc., 140 N.H. 253, 255 (1995) (quoting Black's Law Dictionary 188 (6th ed. 1990)).  Regarding standing to assert a claim for breach of contract, "the general rule [is] that a non-party to a contract has no remedy for breach of contract." Brooks v. Trustees of Dartmouth Coll., 161 N.H. 685, 697 (2011).  The third-party beneficiary doctrine is an exception to that general rule.  See id. (citing Arlington Trust Co. v. Estate of Wood, 123 N.H. 765, 767 (1983)).

Here, it is undisputed that Deutsche Bank was not a party to any agreement with Stewart Title.  In response to Stewart

Title's multi-pronged challenge to Deutsche Bank's standing to
bring a claim for breach of contract, Deutsche Bank states that
"Stewart Title issued a title insurance commitment and title
policy designating the proposed insured and later the insured as
'Long Beach Mortgage Co., its successors and/or assigns, as
their interests may appear.'"  Pl.'s Mem. of Law (doc. no. 40-
1), at 3.  Then it argues that "[a] fair and reasonable reading
of the contract agreed to by Stewart Title (Exhibit N of the
Complaint, Document #1 and Exhibits O and P thereof) makes it
clear that the contract between Stewart Title and Long Beach was
to benefit a third party, namely, the third party assignee of
the mortgage granted by Fadili."  Id.  While that argument seems
to mingle two different theories under which Deutsche Bank might
have standing, i.e., as an assignee and as a third-party
beneficiary, the balance of the memorandum makes it clear that
Deutsche Bank is relying on its putative rights as a third-party
beneficiary of the agreement between Stewart Title and Long
Beach.

In Brooks, the New Hampshire Supreme Court explained the
third-party beneficiary doctrine this way:

> A third-party beneficiary relationship exists if:
> (1) the contract calls for a performance by the
> promisor, which will satisfy some obligation owed by
> the promisee to the third party; or (2) the contract
> is so expressed as to give the promisor reason to know
> that a benefit to a third party is contemplated by the
> promisee as one of the motivating causes of his making

the contract.  <u>Tamposi Associates v. Star Mkt. Co.</u>,
119 N.H. 630, 633 (1979).  "A benefit to a third party
is a 'motivating cause' of entering into a contract
only where the promisee intends to give the
beneficiary the benefit of the promised performance."
<u>Grossman v. Murray</u>, 144 N.H. 345, 348 (1999)
(quotation omitted); <u>see</u> <u>Restatement (Second) of</u>
<u>Contracts</u> § 302(1)(b) (1981).

161 N.H. at 697-98 (parallel citations omitted).  Deutsche Bank

does not argue that Stewart Title's performance under its

agreement with Long Beach satisfied any obligation owed by Long

Beach to Deutsche Bank.  Rather, it argues that the contract

between Long Beach and Stewart Title gave Stewart Title reason

to know that Long Beach was motivated to enter into the

agreement by its desire to confer a benefit on a third party

such as itself.

    To assess Deutsche Bank's argument, it is first necessary

to focus on the contract at issue.[7]  The only agreements between

Deutsche Bank and Stewart Title were those under which Stewart

Title: (1) performed a title search, as guided by the P&S

between Amir and Alia; and (2) conducted the closing.

    Based on the undisputed factual record, there is nothing in

the agreements between Long Beach and Stewart Title that gave

Stewart Title reason to know that Long Beach even thought of

---

[7] Deutsche Bank complicates this issue by conflating Stewart
Title and Stewart Guaranty; it treats them as one and the same
and then bases its argument largely on the title insurance
commitment and the policy of title insurance that were issued by
Stewart <u>Guaranty</u>, not Stewart <u>Title</u>.

conferring a benefit on a third party by entering into those
agreements, much less that any such third-party benefit was a
motivating factor.  While it might be plausibly argued that the
policy of title insurance issued to Long Beach was intended to
protect both Long Beach and any subsequent assignee of the
mortgage it held from Alia, Stewart Title did not issue the
policy of title insurance; Stewart Guaranty did.  In sum,
Stewart Title is entitled to summary judgment on Count VIII on
grounds that Deutsche Bank has no standing to sue on the
contracts under which Stewart Title performed its title search
or conducted the closing of the transaction between Amir and
Alia.

B. Stewart Guaranty's Motion

    Deutsche Bank asserts two claims against Stewart Guaranty
for breach of contract (Counts VI and VII).  Specifically, in
Count VI, Deutsche Bank alleges that "Stewart Title[ ] failed to
provide Long Beach with a valid security interest in the [house
lot] or a valid final lender's title insurance policy," Compl. ¶
76, and claims that "[s]uch failure by Stewart Title was a
breach of the title commitment issued by Stewart Guaranty," id.
¶ 77.  Deutsche Bank alleges, in Count VII, that "[t]he purpose
of the Policy was to insure that Long Beach would have a first
mortgage secured by the [house lot]," Compl. ¶ 83, and asserts
that Stewart Guaranty breached its duties under the policy by

denying the claim that Washington Mutual made, in which it asked
Stewart Title to defend its interests in the house lot in Adel's
bankruptcy proceeding.  Given the claim in Count VI that Stewart
Guaranty did not issue a valid policy of title insurance, the
court will presume that Count VII, which asserts rights under
that policy, was pled in the alternative.  Stewart Guaranty
moves for summary judgment on both counts.

   1. Breach of the Title Commitment (Count VI)

   Stewart Guaranty argues that it is entitled to summary
judgment on Count VI because: (1) its obligations, and potential
liability, under the title commitment expired with its issuance
of a policy of title insurance; and (2) the policy it issued
conformed in all respects with the promises it made in the
commitment.  Deutsche Bank objects.

   Count VI is off kilter in a number of ways.  It alleges
that Stewart Title failed to provide Long Beach with a "valid
final lender's title insurance policy," but nowhere alleges that
Stewart <u>Title</u>, as opposed to Stewart <u>Guaranty</u>, was even in the
business of providing title insurance.  The undisputed factual
record demonstrates that the title insurance policy in this case
was issued by Stewart Guaranty, which fact Deutsche Bank appears
to acknowledge in its objection to summary judgment.  Moreover,
neither the complaint nor Deutsche Bank's objection to summary
judgment indicate: (1) what, exactly, is invalid about the

26

policy Stewart Guaranty issued;[8] or (2) how, as the complaint asserts, a "failure by Stewart Title" could possibly constitute "a breach of the title commitment issued by Stewart Guaranty."

That said, the court turns to the contract Deutsche Bank claims to have been breached, the commitment for title insurance issued by Stewart Guaranty.  In that commitment, Stewart Guaranty promised to issue a policy of title insurance on the property identified in Schedule A.  Schedule A describes the property in terms of: (1) a registry of deeds book and page reference to the conveyance of the vacant lot from Adel to Amir; (2) the legal description of the vacant lot; and (3) the street address of the house lot.  The policy that issued described the property in the very same way.  So, Stewart Guaranty issued exactly the title insurance policy it promised it would issue.

In its objection to summary judgment, Deutsche Bank complains that Stewart Guaranty has cited no authority "to support its theory that because the title policy conforms with the title commitment," Stewart Guaranty "has met its obligation to issue a proper title insurance policy."  Pl.'s Mem. of Law (doc. no. 39-1), at 6.  But no authority is required for the

---

[8] Obviously, Deutsche Bank is unhappy that Stewart Guaranty construes the policy as insuring the validity of the title to the vacant lot rather than the house lot, but there is a difference between an invalid policy, i.e., one that provides no coverage at all, and a policy that does provide coverage, but for a different title than the one the policy holder thought it covered, which is the situation here.

proposition that a party who fulfills the promises made in an
agreement cannot be held liable for breaching that agreement.
Here, Stewart Guaranty promised to issue a policy of title
insurance covering a specified property, and the undisputed
factual record demonstrates that it did so.  That entitles
Stewart Guaranty to summary judgment on Count VI.

Deutsche Bank also argues that there is a genuine issue of
material fact regarding whether the title insurance policy
conforms to the commitment.  More specifically, Deutesche Bank
says: "Since Section 5, Schedule A of the final title policy is
ambiguous [because it refers to both the legal description of
the vacant lot and the street address of the house lot], there
are genuine issues of material fact(s) remaining which must be
resolved by a jury."  Pl.'s Mem. of Law (doc. no. 39-1), at 6.
There are two problems with that argument.

First, the property description in the final policy is
virtually identical to the property description in the
commitment.  Any ambiguity in one is also in the other.  Thus,
the existence of an ambiguity in the final policy says nothing
about whether the policy conforms to the commitment.  An
ambiguity in the final policy might matter if Deutsche Bank were
claiming that the commitment was a promise to insure the title
to the house lot that Stuart Guaranty breached by issuing a
policy on the vacant lot.  In such a case, if the commitment

28

unambiguously promised to insure title to the house lot, and the final policy could reasonably be construed either as insuring the house lot or the vacant lot, then the ambiguity on which Deutsche Bank relies would be meaningful.  But that is not Deutesche Bank's claim.  Rather, it claims that Long Beach believed all along that it was getting a mortgage on, and title insurance for, the house lot.  Second, even if the alleged ambiguity in Schedule A of the title insurance policy did have a bearing on resolving the claim stated in Count VI, that ambiguity is a question of law for the court, not a question of fact for a jury.  See Progressive N. Ins. Co. v. Argonaut Ins. Co., 161 N.H. 778, 780 (2011) ("The interpretation of insurance policy language, like any contract language, is ultimately an issue of law for [the] court to decide.") (citing Marikar v. Peerless Ins. Co., 151 N.H. 395, 397 (2004)).

In sum, Stewart Guaranty is entitled to summary judgment on the breach-of-contract claim stated in Count VI.

2. Breach of the Policy of Title Insurance (Count VII)

Stewart Guaranty argues that it is entitled to summary judgment on Count VII because the policy it issued unambiguously insures the validity of the title to the vacant lot and, thus, did not obligate it to protect Deutsche Bank's interests (if any) in the house lot.  Deutsche Bank counters that inclusion of both the street address of the house lot and the legal

description of the vacant lot in the policy created an ambiguity that must be resolved in its favor.  Resolution of that ambiguity in its favor, in turn, would provide the basis for its claim that Stewart Guaranty breached its duties under the title insurance policy by failing to protect Washington Mutual's interests in the house lot.

The court notes that it is not at all clear what benefit Deutsche Bank would gain from its proposed construction of the title insurance policy.  The policy insures the validity of a title.  If, as Deutsche Bank contends, the policy vouchsafed the validity of the title to the house lot, the only entity who would have benefitted from a defense of that title in Adel's bankruptcy case is the bankruptcy Trustee, who needed to have good title to the house lot, through Adel, before selling it at auction.  When Washington Mutual challenged the bankruptcy Trustee's right to sell the house lot, a defense of the title to that property, which is what Stewart Guaranty would have been obligated to provide, would have done Washington Mutual no good, as the most recent grantee in the chain of title to the house lot was Adel.  What Washington Mutual needed in the bankruptcy court was a successful attack on the titles to both the house lot and the vacant lot such that title to the house lot went to Alia.  Stewart Guaranty's obligations under the title insurance policy are limited to defending a single title, and do not

extend to prosecuting Deutsche Bank's claim on the security Long
Beach mistakenly thought it was getting in exchange for the loan
it made to Alia.

Be that as it may, both parties agree that resolution of
this issue turns on the proper construction of the provision in
the policy that describes the property subject to coverage.  As
noted above, interpretation of that policy language is a
question of law for the court.  See Progressive, 161 N.H. at
780.  When interpreting an insurance policy, the court is
obligated to construe its language "as would a reasonable person
in the position of the insured based upon a more than casual
reading of the policy as a whole."  N. Sec. Ins. Co. v. Connors,
161 N.H. 645, (2011) (citing Philbrick v. Liberty Mut. Fire Ins.
Co., 156 N.H. 389, 390 (2007)).  To do so, the court "look[s] to
the plain and ordinary meaning of the policy's words in
context."  Progressive, 161 N.H. at 781 (citation omitted).
Moreover:

> Policy terms are construed objectively, and when the
> terms of a policy are clear and unambiguous, [the
> court] accord[s] the language its natural and
> ordinary meaning.  When an insurance policy's
> language is ambiguous, however, and one reasonable
> interpretation favors coverage, [the court]
> construe[s] the policy in the insured's favor and
> against the insurer.

Id. (citations omitted).  Ambiguity exists, however, only "if
the policy is reasonably susceptible of more than one

interpretation."  Northern Security, 161 N.H. at 650.  Stewart
Guaranty argues that there is no ambiguity to construe in
Deutsche Bank's favor.  The court agrees.

Schedule A of the policy describes the insured mortgage as
the mortgage from Alia to Long Beach.  That mortgage
incorporates the legal description of the vacant lot.  Schedule
A also contains two entries under the item calling for a
description of the land referred to in the policy.  The first
entry is: "SEE ATTACHED EXHIBIT 'A' FOR COMPLETE LEGAL
DESCRIPTION MADE A PART HEREOF."  Def.'s Mot. Summ. J., Ex. K
(doc. no. 13-3), at 6.  The second entry, separated from the
first entry by several blank lines, is: "Property address: 132
Rogers Road, Alton NH."  Id.

Stewart Guaranty construes Schedule A as providing that the
policy applies to the property whose legal description is
appended as Exhibit A, i.e., the vacant lot.  Deutsche Bank's
alternative construction, that Schedule A provides that the
policy applies to the house lot, is not reasonable.  First of
all, Schedule A identifies the insured mortgage by book and page
number in the registry of deeds, and the mortgage so identified
incorporates the legal description of only one property, the
vacant lot.  Second, in the portion of Schedule A that
identifies the land referred to in the policy, the reference to
the vacant lot comes first and includes a one-page legal

description while the seven-word reference to the house lot comes second and does not include a legal description.  When construing a policy of title insurance that identifies two properties, one by legal description and the other by street address, it is not reasonable to construe the policy as applying to the property identified by the street address, in that titles are not indexed by street address in the registry of deeds. Moreover, Deutsche Bank's construction of the policy is also unreasonable in that under it, a seven-word reference to a street address – meaningless information for title research – would turn the one-page legal description attached to the policy into mere surplussage, a construction practice that is judicially disfavored.  See Progressive, 161 N.H. at 782 (citing Int'l Surplus Lines Ins. Co. v. Mfrs. & Merchs. Mut. Ins. Co., 140 N.H. 15, 19 (1995)).  As between a construction that turns seven lines into surplussage and one that does the same to an entire one-page attachment, the court has no trouble concluding that the former is reasonable while the latter is not.

Because there is no ambiguity to construe in Deutsche Bank's favor, Stewart Guaranty is entitled to summary judgment on Deutsche Bank's claim, stated in Count VII, that it breached its duties under the policy of title insurance Stewart Guaranty issued to Long Beach.

C. Alia Fadili's Motion

Deutsche Bank asserts claims against Alia Fadili for breach of contract (Count I), promissory estoppel (Count III), negligence (Count V), negligent misrepresentation (Count IX), and unjust enrichment (Count X).  Deutsche Bank also seeks, in Count II, a declaratory judgment that it is entitled to foreclose on the vacant lot.  Fadili moves for summary judgment on all but Count X.  She also seeks summary judgment on her counterclaim for breach of contract.  Deutsche Bank objects.

Stewart Title and Stewart Guaranty also object, principally, it seems, to challenge Fadili's Rule 7.2(b)(1) statement of facts.  Specifically, Stewart Title contests: (1) "any assertion that any contractual or other relationship existed between it and the Plaintiff, Deutsche Bank as Trustee," Def.'s Obj. (doc. no. 36), at 1; (2) "any assertion that it acted negligently," id. at 2; and (3) "[t]he assertion that Adel attempted to convey 132 Roger Street to Amir," id.  Stewart Guaranty contests: (1) "[t]he assertion that any parcel conveyed from Dreher[9] to Adel, or from Adel to Amir or from Amir to Alia was known as 132 Roger Street," Def.'s Mem. of Law (doc. no. 37-1), at 17; (2) "[t]he assertion that Adel attempted to convey 132 Rogers Road to Amir," id. at 18; (3) "[t]he assertion that

_____

[9] Gerald W. Dreher and Martha K. Dreher granted Adel a deed to one part of the house lot.  The remainder came in a deed to Adel from Bradford H. and Virginia S. Jones.

Amir intended to convey [the house lot] to Alia," id.; (4)
"[t]he assertion that any of the conveyances between the
Fadili's was intended to transfer ownership of any particular
parcel,"[10] id. at 19; and (5) "[t]he assertion that Alia intended
to acquire or mortgage 132 Rogers Road," id. at 20.

### 1. Breach of Contract (Count I)

In Count I, Deutsche Bank claims that Fadili has breached
her promissory note by failing to make payments on it since
August of 2008, and breached the terms and conditions of her
loan by failing to give Long Beach a mortgage on the house lot.
Fadili argues that she is entitled to summary judgment on Count
I because: (1) Deutsche Bank does not hold the note and thus,
cannot enforce it; and (2) her performance on the note is
excused due to a failure of consideration and by the doctrines
of impossibility of performance and commercial frustration, due
to Deutsche Bank's failure to retain title to the house lot
throughout the life of the loan.  Deutsche Bank disagrees,
categorically.

---

[10] In addition to contesting that factual statement, Stewart
Guaranty goes on to argue that "evidence exists to create a
triable factual issue that the entire series of conveyances was
merely a device or series of devices to hide assets from
creditors without changing the beneficial or equitable ownership
thereof."  Def.'s Mem. of Law (document no. 37-1), at 19.

### a. Validity of the Mortgage Deed

In an argument that is not explicitly tethered to any of Deutsche Bank's claims against her, Fadili contends that the mortgage deed in this case is void ab initio because neither she nor Long Beach intended for her loan to be secured by a mortgage on the vacant lot.  While that may be, it is certain that neither party intended for the loan to be unsecured.  More importantly, what Fadili does not explain, and what the court cannot understand, is how her position in this case would be aided by a determination that she gave Long Beach nothing, in the form of a void mortgage deed, in exchange for a loan of $840,000.

Moreover, neither of the two cases Fadili cites in support of her voidness argument is at all supportive of her position. Keybank National Association v. NBD Bank stands for the proposition that "[i]n order for a mortgage to be effective, it must contain a description of the land intended to be covered sufficient to identify it," 699 N.E.2d 322, 326 (Ind. Ct. App. 1998) (citation omitted).  Here, Fadili does not challenge the sufficiency of the legal description in her mortgage deed.  The problem she faces is that the legal description in the deed leads one directly to the vacant lot.  Moynihan v. Brennan, in turn, was a case in which the court reformed a deed to bring it in line with the intent of the grantor and the grantee by

reducing the amount of land the deed conveyed, <u>not</u> by
substituting one legal description for another, <u>see</u> 77 N.H. 273,
275 (1914).  For these reasons, Fadili's reliance on <u>Keybank</u> and
<u>Moynihan</u> is unavailing.

### b. Standing to Sue on the Note

Fadili argues that to the extent Count I is based on her
failure to perform under the promissory note, she is entitled to
summary judgment because: (1) Deutsche Bank's complaint does not
adequately allege that it has standing to sue on the note; and
(2) she has produced evidence that Deutsche Bank does not hold
the note.  Because Deutsche Bank has responded by producing
evidence that it does, in fact, hold the note, <u>see</u> Pl.'s Mem. of
Law, Ex. 3 (doc. no. 38-4), Deutsche Bank has created a triable
issue of material fact and, as a result, Fadili is not entitled
to summary judgment on grounds that Deutsche Bank lacks standing
to sue on the note.

### c. Excusal of Performance

Fadili further argues that because Deutsche Bank does not
have title to the house lot, it "cannot fulfill its obligation
to restore [her] to the full title both parties thought she
owned prior to the mortgage deed," Def.'s Mem. of Law (doc. no.
32-1), at 11.  Fadili argues that this renders her obligations
under the promissory note "excused" as a matter of law due to

failure of consideration, impossibility of performance, and
commercial frustration.

As a preliminary matter, because Amir never conveyed the
house lot to Alia, due to the fact that he never owned it in the
first place, it is misleading to speak of Deutsche Bank's
obligation to restore full title in the house lot to Alia.
Moreover, while she characterizes Deutsche Bank's inability to
"restore" her title to the house lot as a failure of
consideration, she ignores completely the consideration Long
Beach provided, namely the $840,000 it loaned Alia, money Alia
then paid to Amir.  In Deutsche Bank's view, if there is any
failure of consideration in this case, it is based on Amir's
conveyance of the vacant lot in exchange for a purchase price
based on the value of the house lot.  Amir's retention of the
proceeds from Alia's loan from Long Beach is the "elephant in
the room" in this case.

Fadili's failure-of-consideration argument also misses two
key points.  First, while Deutsche Bank does not hold a mortgage
on the house lot, it <u>does</u> hold a mortgage deed to the vacant
lot.  If Fadili were to pay off the loan, that mortgage would be
discharged, and Fadili would hold full title to the vacant lot.
Second, Long Beach's loan to Fadili was secured by a mortgage on
the vacant lot rather than the house lot because Long Beach
commissioned a title search based on the property description in

38

the P&S.  The P&S, in turn, was executed by Amir and Alia.  If
the P&S had incorporated the legal description of the house lot
rather than the vacant lot, then, perhaps, things might have
unfolded differently.  But since Fadili provided the P&S to Long
Beach, she cannot now rely on her failure to properly describe
the house lot in the P&S to excuse her from any performance
under the note.  Regardless of what Fadili and Long Beach may
have thought she was mortgaging, the fact remains that she
borrowed $840,000 from Long Beach, and Deutsche Bank now holds
security for that loan in the form of a mortgage on the vacant
lot.  In short, Fadili is not entitled to summary judgment on
Count I on grounds that her performance under the note is
excused.

### 2. Promissory Estoppel (Count III)

In Count III, Deutsche Bank alleges that "[d]ue to the
inadvertence and neglect of the Defendant, Alia Fadili, Long
Beach was given a mortgage for the [vacant lot]," Compl. ¶ 53,
and on that basis, asks the court to estop Fadili from denying
that she gave Long Beach a mortgage on the vacant lot.  Fadili
makes two arguments for summary judgment on Count III: (1)
"Counts II and III of the Complaint must fail because Plaintiff
admits in virtually every Count of the Complaint that the
parties did not intend to grant or receive a mortgage on the
vacant lot," Def.'s Mem. of Law (doc. no. 32-1), at 6; and (2)

"Plaintiff is not entitled to judgment based on Promissory
Estoppel as that action is based on the alleged negligence of
Defendant and Defendant could not have been negligent as a
matter of law because no duty was owed by her to review for
accuracy the documents prepared by Stewart Title," id. at 13.
Deutsche Bank does not respond.

Both Count III and Fadili's arguments for summary judgment
are somewhat perplexing.  Regardless, "in all instances,
application of promissory estoppel is appropriate only in the
absence of an express agreement" on the same subject, unless
that agreement is somehow unenforceable in contract."  Rockwood
v. SKF USA Inc., 758 F. Supp. 2d 44, 57 (D.N.H. 2010) (quoting
Great Lakes Aircraft Co. v. City of Claremont, 135 N.H. 270, 290
(1992)).  Given that Fadili's relationship with Long Beach was
governed by various express agreements, she is entitled to
judgment as a matter of law on Count III.

3. Negligence (Count V)

In Count V, Deutsche Bank claims that Fadili breached her
duty to Long Beach by: (1) failing to make sure that Amir gave
her a deed to the house lot; and (2) presenting Long Beach with
a purchase and sale agreement that included a registry of deeds
book and page reference to the vacant lot rather than the house
lot.  Fadili argues that she is entitled to summary judgment on
Count V because she owed Long Beach no duty to provide a correct

40

legal description of the property she was pledging as security
for her loan.  More specifically, Fadili argues that: (1)
"Plaintiff's complaint cites no source of the duty alleged to be
owed by a borrower to the lending bank to review a mortgage
description prepared by the lending bank[']s chosen agent,"
Def.'s Mem. of Law (doc. no. 32-1), at 8, and that "[t]he notion
that a borrower owes a duty to the lender to independently
verify the property description where the lender has hired an
independent expert to prepare the mortgage documents is an
argument that finds no purchase anywhere in the law."  Id.  In
reliance on Manchenton v. Auto Leasing Corp., 135 N.H. 298
(1992), Deutsche Bank contends that by providing information to
Long Beach, she undertook a duty to provide correct information.

     In a negligence action, "[w]hether a duty exists in a
particular case is a question of law."  Coan v. N.H. Dep't of
Envtl. Servs., 161 N.H. 1, 8 (2010) (citing Hungerford v. Jones,
143 N.H. 208, 211 (1998)).  The particulars of this case are
that Fadili presented a P&S to Long Beach and that Long Beach
commissioned a title search based on the information in the P&S
and, ultimately, made a loan to Fadili.  Thus, the duty on which
Deutsche Bank bases its negligence claim was not, as Fadili
would have it, a mortgagor's duty to review the mortgage
description prepared by her lender's title company.  Rather, the
duty at issue is a borrower's duty to give her lender an

accurate description of the property she proposes to mortgage as
security for her loan.  Given the circumstances of this case,
the court is not prepared to say, as a matter of law, that
Fadili did not owe Long Beach a duty to accurately identify the
property she intended to purchase and put up as security for her
loan from Long Beach.  Cf. Snierson v. Scruton, 145 N.H. 73, 78
(2000) ("It is the duty of one who volunteers information to
another not having equal knowledge, with the intention that he
[or she] will act upon it, to exercise reasonable care to verify
the truth of his [or her] statements before making them.")
(quoting Patch v. Arsenault, 139 N.H. 313, 319 (1995)).
Accordingly, Fadili is not entitled to summary judgment on Count
V.

### 4. Negligent Misrepresentation (Count IX)

In count IX, Deutsche Bank claims that Fadili is liable for
negligent misrepresentation because she "provided a purchase and
sale agreement to Long Beach and represented that she was to
become the owner of the [house lot] pursuant to the terms of the
purchase and sale agreement."  Compl. ¶ 97.  Fadili argues that
she is entitled to summary judgment on Count IX because she
denies preparing the P&S (even though she admits to signing it),
and there is no evidence on a whole host of factual matters
related to the preparation of the P&S, its transmission to Long
Beach, and Long Beach's use of it.  She further notes that

Deutsche Bank has identified no witness from Long Beach who can
testify on the element of reliance.  Without responding directly
to Fadili's evidentiary concerns, Deutsche Bank simply points
out that Fadili's mortgage broker presented the P&S to Stewart
Title, which relied on the faulty information contained therein
to prepare a plethora of documents for Long Beach.

To prevail on its claim for negligent misrepresentation,
Deutsche Bank must "prove that [Fadili] made a representation
with knowledge of its falsity or with conscious indifference to
its truth with the intention to cause [Long Beach] to rely upon
it and that [Long Beach] justifiably relied upon it."  Akwa
Vista, LLC v. NRT, Inc., 160 N.H. 594, 601 (2010) (citing
Snierson, 145 N.H. at 77).  While the complaint is not as clear
as it might be regarding the statement(s) Deutsche Bank claims
to be misrepresentations – it could reasonably be read as
alleging that Alia made a false statement about the P&S or a
false statement in the P&S – the objection to Fadili's summary
judgment motion makes it clear that the alleged misrepresenta-
tion is the statement in the P&S that the property with the
street address 132 Roger Road is more particularly described in
the deed recorded at Page 728 of Book 1719 in the Belknap County
Registry of Deeds.  While Fadili points out, correctly, that the
record contains no direct evidence of any specific individual at
Long Beach reading and relying on the P&S, the record is replete

43

with compelling undisputed circumstantial evidence of reliance;
Long Beach did, after all, secure an appraisal of 132 Roger Road
and, thereafter, loaned Alia $840,000.  Accordingly, Fadili is
not entitled to summary judgment on Count IX on the grounds
advanced in her motion.

    5. Declaratory Judgment (Count II)

    In Count II, Deutsche Bank asks the court to declare that
it is entitled to exercise its rights under the mortgage against
the vacant lot, in order to partially recover on its loan to
Fadili.  Fadili argues that she is entitled to summary judgment
on Deutsche Bank's request for a declaratory judgment because:
(1) Deutsche Bank has admitted, throughout its complaint, that
the parties did not intend to encumber the vacant lot with a
mortgage; (2) Deutsche Bank has recourse under the policy of
title insurance issued by Stewart Guaranty; and (3) Deutsche
Bank is bound by the negligence of Long Beach's agent, Stewart
Title, which failed to discover that it was using the legal
description of the vacant lot rather than the house lot.
Deutsche Bank responds only to Fadili's second argument,
contending that her reliance on Wilshire Servicing Corp. v.
Timber Ridge Partnership, 743 N.E.2d 1173 (Ind. Ct. App. 2001),
is misplaced.  The court is not persuaded by any of Fadili's
arguments for summary judgment on Count II.

Her first argument is that Deutsche Bank, having alleged that Long Beach did not intend to accept a mortgage on the vacant lot, cannot also seek to enforce a mortgage on the vacant lot.  Long Beach may not have intended to take a mortgage on the vacant lot, but it surely intended to take a mortgage on some piece of property to secure the loan it made to Fadili.  And, it is clear that Fadili intended to give a mortgage to secure the loan.  So, even if it were undisputed that Fadili and Long Beach did not intend for Fadili's loan to be secured by a loan on the vacant lot, that fact would provide no basis for judgment as a matter of law in favor of Fadili on Count II.  Such a determination would have the result of rendering her loan entirely unsecured, which, indisputably, was not the intent of either Long Beach or Fadili.

Fadili's second argument (i.e., that Deutsche Bank has recourse against Stewart Guaranty) is foreclosed by the court's grant of summary judgment to Stewart Guaranty.

Fadili's third argument is that Deutsche Bank is bound by Stewart Title's alleged negligence in: (1) failing to discover, in 2006, that it had erroneously used the legal description of the vacant lot when performing services in connection with the 2002 transaction between Adel and Amir; and (2) perpetuating that mistake while performing services in connection with the transaction between Amir and Alia.  Even assuming that Stewart

Title was negligent, and that Deutsche Bank is bound by that negligence, Fadili is not entitled to judgment as a matter of law on Deutsche Bank's request for the court to declare that it is entitled to exercise its rights under the mortgage with respect to the vacant lot.

Fadili seems to suggest that if Deutsche Bank is bound by Stewart Title's negligence, the mortgage on the vacant lot is a nullity. But that would leave Deutsche Bank with an unsecured loan. Because Fadili has failed to produce undisputed evidence, or any evidence at all, from which it could be found that Long Beach intended to make her an unsecured loan, her third argument fails.[11]

For its part, Deutsche Bank recognizes that it is bound by Stewart Title's negligence. In its view, however, being bound simply means being left with an $840,000 loan that is secured by a mortgage on a $500,000 property rather than a mortgage on a $1 million property. That appears to be correct, but Deutsche Bank has not moved for summary judgment on Count II.

Because the court is not persuaded by any of Fadili's three arguments, she is not entitled to summary judgment on Count II.

---

[11] If Stewart Title's alleged negligence had resulted in Alia giving Long Beach a mortgage that was unenforceable because it did not contain a sufficient legal description of any property, then, perhaps, being bound by the title company's negligence would leave Deutsche Bank with no security for the loan. But that is not the situation in this case.

But, because Deutsche Bank has not moved for summary judgment on
Count II, the court can do no more at this point than deny
Fadili's motion for summary judgment on Deutsche Bank's request
for a declaratory judgment.

### 6. Fadili's Counterclaim for Breach of Contract

In the first count of her counterclaim, Alia asserts that
Long Beach was contractually obligated to prepare the closing
documents for the conveyance from Amir to her and that it
breached the loan contract "by preparing a mortgage deed with
the incorrect deed description, resulting ultimately in the loss
of the [house lot] at the bankruptcy auction in the Fall of
2008."  Def.'s Answer & Countercls. (doc. no. 5) ¶ 114.  On that
basis, she seeks to recover from Deutsche Bank "all the interest
and principal payments she made under the promissory note and
mortgage, the equity she lost in the property, and the
attorney's fees and costs she incurred in attempting to halt the
bankruptcy sale of the property."  Id. ¶ 116.  At summary
judgment, she says she is entitled to the closing costs she
paid.  She further argues that where, as here, the purpose of a
contract has been rendered a nullity and an obligor's
performance is excused, she is entitled to recoup the mortgage
payments she has already made.  Deutsche Bank simply says that
summary judgment is not appropriate because genuine issues of

47

material fact remain as to whether Fadili herself was the cause of the damages she seeks in her breach of contract claim.

The court agrees with Deutsche Bank that Fadili is not entitled to summary judgment on her breach of contract claim. In so ruling, the court notes that Fadili has made no factual allegations concerning the instructions Long Beach gave Stewart Title prior to Stewart Title's title search.  The only evidence in the record pertaining to those instructions consists of the P&S Fadili provided Long Beach, which already incorporated the "mistake" she accuses Long Beach of making.

D. Deutsche Bank's Motion

Without providing the "short and concise statement of material facts, supported by appropriate record citations" required by Local Rule 7.2(b)(1), Deutsche Bank moves for summary judgment.  Oddly, neither the caption of the motion, nor the body of it, nor the prayers for relief indicate what, precisely, Deutsche Bank is seeking summary judgment on, i.e., its own claims or Fadili's counterclaims.  As best the court can tell, the whole purpose of Deutsche Bank's motion is to contest the following allegation in Fadili's counterclaim: "Plaintiff hired Stewart Title as its agent for the preparation of the closing documents."  Def.'s Answer & Countercls. ¶ 109. Whatever else it may be, document no. 33 is not a properly

48

supported motion for summary judgment.  As a result, it is
denied.

## Conclusion

For the reasons given: (1) Stewart Title's motion for
summary judgment, document no. 29, is granted; (2) Stewart
Guaranty's motion for summary judgment, document no. 31, is
granted; (3) Fadili's motion for summary judgment, document no.
32, is granted as to Count III, but is otherwise denied; and (4)
Deutsch Bank's motion for summary judgment, document no. 33, is
denied.  The following claims remain for trial: Counts I, II,
and IV-X of Deutsche Bank's complaint, and all three of Fadili's
counterclaims.  The court notes, however, that Count II of
Deutsche Bank's complaint, its request for a declaratory
judgment, is for resolution by the court rather than the jury.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

October 4, 2011

cc:  Edmond J. Ford, Esq.
     Steven M. Latici, Esq.
     William Philpot, Jr., Esq.
     Christopher J. Somma, Esq.